Robert W. Sadowski
Raphael Katz
DIAMOND MCCARTHY LLP
The New York Times Building
620 8th Avenue, 39th Floor
New York, New York  10018
Tel. No.: (212) 430-5400

Attorneys for Relator John Doe

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA;
STATE OF CALIFORNIA;
STATE OF COLORADO;
STATE OF CONNECTICUT;
STATE OF DELAWARE;
STATE OF FLORIDA;
STATE OF GEORGIA;
STATE OF ILLINOIS;
STATE OF INDIANA;
STATE OF LOUISIANA;
STATE OF MARYLAND;
COMMONWEALTH OF
MASSACHUSETTS;
STATE OF MICHIGAN;
STATE OF MONTANA;
STATE OF NEVADA;
STATE OF NEW JERSEY;
STATE OF NEW YORK;
STATE OF NORTH CAROLINA;
STATE OF OKLAHOMA;
STATE OF RHODE ISLAND;
STATE OF TENNESSEE;
STATE OF TEXAS;
COMMONWEALTH OF VIRGINIA;
STATE OF WISCONSIN;
DISTRICT OF COLUMBIA;
NEW YORK, NEW YORK;
CHICAGO, ILLINOIS,
*ex rel.* JOHN DOE,

        Plaintiffs/Relator

        - against -

**COMPLAINT**

**FILED *IN CAMERA* AND UNDER
SEAL PURSUANT TO 31 U.S.C. §
3730(b)(2)**

WALGREEN CO.; WALGREENS
INFUSION AND RESPIRATORY
SERVICES; OPTION CARE INC.;
OPTION CARE OF NEW YORK, INC.;
and TRINITY HOMECARE LLC,

Defendants.

On behalf of the United States of America, and on behalf of the State of
California, the State of Colorado, the State of Connecticut, the State of Delaware, the
State of Florida, the State of Georgia, the State of Illinois, the State of Indiana, the State
of Louisiana, the State of Maryland, the Commonwealth of Massachusetts, the State of
Michigan, the State of Montana, the State of Nevada, the State of New Jersey, the State
of New York, the State of North Carolina, the State of Oklahoma, the State of Rhode
Island, the State of Tennessee, the State of Texas, the Commonwealth of Virginia, the
State of Wisconsin and the District of Columbia and Chicago, Illinois and New York,
New York  (collectively "the States"), and Relator John Doe ("Relator", by and through
Relator's attorneys' Diamond McCarthy LLP,  file this *qui tam* action against Walgreen
Co., Walgreens Infusion and respiratory Services, Option Care Inc., Option Care of New
York, Inc., and Trinity Homecare LLC (collectively "Defendants"), and allege as
follows:

## PRELIMINARY STATEMENT AND NATURE OF THE ACTION

1.      This action seeks to recover treble damages and civil penalties on behalf
of the United States of America and the above-captioned States and Cities arising from
the conduct of Defendants who:  made, used, or presented, or caused to be made, used or
presented, certain false or fraudulent statements, records and/or claims for payment or

approval to the United States of America; all in violation of the False Claims Act, 31

U.S.C. §§ 3729, *et seq.* (the "FCA") and the applicable State False Claims Acts.

2.     Relator also asserts related claims pursuant to 31 U.S.C. § 3730(h) and

the applicable State statutes for unlawful retaliation and seeks appropriate statutory

penalties and relief.

3.     These claims are based on Defendants' submissions of false and

fraudulent claims to the federal Medicare Program and the State's Medicaid Programs

and other federal and state funded programs for payment of funds for the reimbursement

of claims for infusion pharmaceuticals and related services.

4.     Defendants engaged in a scheme whereby they entered into unlawful

financial relationships with doctors providing them with kickbacks in order to incentivize

them to prescribe Defendants' pharmaceuticals, violating the Anti-Kickback Statute and

the Stark Act.  More specifically, Defendants provided free nursing services to patients

who receive high-cost pharmaceuticals through infusion, thereby providing a kickback to

physicians who prescribe Defendants' high-cost pharmaceuticals through infusion.

5.     Defendants' false claims and fraudulent actions caused the Federal

Government and the states to be damaged by hundreds of millions of dollars, and also by

their actions Defendants redirected nursing services away from patients who are

prescribed lower cost infusion pharmaceuticals in order to service patients who are

prescribed higher cost infusion pharmaceuticals.  Thereby patients who used lower cost

pharmaceuticals are denied the same benefit of nursing services.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims brought under the False Claims Act pursuant to 31 U.S.C. § 3730(a) (False Claims Act), 28 U.S.C. §§ 1331 (Federal question), 1345 (United States as plaintiff).

7.      Venue lies in this District pursuant to 31 U.S.C. § 3732(a), and 28 U.S.C. §§ 1391(b) (1) and (2), because Defendants reside or transact business in the Southern District of New York, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

8.      This action is not jurisdictionally precluded by the public disclosure bar of the False Claims Act, 31 U.S.C. § 3730(e) (4).  Upon information and belief, there has been no "public disclosure" of the matters alleged herein and this action is not "based upon" any such disclosure.  Through his interactions with various employees of the Defendants and other persons, Relator has "direct and independent knowledge" of the instant allegations.  In addition, Relator has "voluntarily provided," and offered to provide, this information to the Government before the filing of this complaint. Therefore, to the extent any of these allegations are deemed to have been based upon a public disclosure, Relator is an "original source" of this information within the meaning of the False Claims Act, and is expressly excepted from the public disclosure bar.

## THE PARTIES

9.      Plaintiff is the United States of America on behalf of its agency the United States Department of Health and Human Services ("HHS") and the Center for Medicaid and Medicare Services ("CMS").  The United States is a real party in interest in this action because the United States provides at least 50% of the funding for the

Medicaid Program. Typically, the states provide 50% of the funding for the Medicaid Program in each state.

10.     Relator John Doe is an individual residing in New York State.

11.     Defendant Walgreen Co. ("Walgreen") is based in Illinois and is the largest U.S. drugstore chain and specialty pharmacy. On August 20, 2007, Walgreen acquired Option Care Inc., ("Option Care"), which then operated as a subsidiary of Walgreen. Defendant Option Care is located at 485 Half Day Road, Suite 300, Buffalo Grove, Illinois. Option Care provided specialty pharmacy services and infusion pharmacy services to patients with acute or chronic conditions who can be treated at home. Its services included the distribution and administration of infusible and injectible medications, patient care coordination, clinical and compliance management, and reimbursement support. Option Care provided its services through a network of more than 100 home infusion locations, 120 alterative treatment sites and respiratory therapy locations in 40 states and had nearly 2,000 employees. On November 9, 2006, Option Care acquired Trinity Homecare, LLC ("Trinity"), which operated as a subsidiary of Option Care of New York, Inc. Trinity provided home health care services in New York, New Jersey and Florida. Its services included nursing and clinical support, infusion therapy, respiratory care, and medical equipment and supplies. Trinity is based at 114-02 15th Avenue College Point, New York. Following its acquisition, Trinity was renamed Trinity Homecare, A Walgreens Co. Currently, Option Care and Trinity are called Walgreens Infusion and Respiratory Services.

### THE LAW

### The Medicare Program

12.     Medicare is a Federal Government-funded medical assistance program, primarily benefiting elderly individuals, 42 U.S.C. §§ 1395, *et seq.* Medicare is administered by the Federal Centers for Medicare and Medicaid Services ("CMS"), which is a division of the U.S. Department of Health and Human Services ("HHS").

13.     Prior to January 1, 2006, Medicare did not pay for over-the-counter drugs or most self-administered prescription drugs. However, Medicare did pay for certain categories of drugs used by Medicare beneficiaries, including certain hospital-administered or physician-administered drugs.

14.     Medicare typically covers the costs of drugs administered by infusion.

15.     Compliance with the Anti-Kickback Statute and the Stark Act are conditions of payment for reimbursement under the Medicare Program.

**The Medicaid Program**

16.     The Medicaid program provides medical coverage to the needy, the medically needy aged, the blind, the disabled, and needy families with dependent children. 42 U.S.C. §§ 1396-1396v. The Medicaid program is funded by both Federal and State funds, (collectively referred to as "Medicaid Funds"), with the Federal contribution computed separately for each State. 42 U.S.C. §§ 1396b; 1396d(b). At the Federal level, Medicaid is administered by CMS. Medicaid is used by 49 states, each of which has a State Medicaid agency to administer the program.

17.     The states are permitted to expend Medicaid Funds to provide medical assistance for eligible persons for inpatient and outpatient prescription drugs. 42 U. S .C. § 1396a(10)(A); 1396d(a)(12).

18.     Compliance with the Anti-Kickback Statute and the Stark Act are conditions of payment for reimbursement under the Medicaid Program.

**The Federal False Claims Act**

19.     The FCA, specifically 31 U.S.C. § 3729(a)(1) and (2), imposes liability upon any person who: "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval;" or "knowingly makes, uses or causes to be made or used, a false record or statement to get false or fraudulent claims paid or approved." Any person found to have violated these provisions is liable for a civil penalty of up to $11,000 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government.

20.     The FCA imposes liability where the conduct is "in reckless disregard of the truth or falsity of the information" and "no proof of specific intent to defraud is required." 31 U.S.C. § 3729(B).  The FCA also broadly defines a "claim" as including "any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c).

21.     Under the FCA, kickbacks and unlawful financial relationships are a violation of law, rendering the payor and recipient of kickbacks liable for damages and penalties, as are violations of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) and the Stark Act, 42 C.F.R. § 411.353.

**The State and City False Claims Acts**

22.     Each of the captioned state and city plaintiffs has their own False Claims Acts or similar statutes.  The false or fraudulent claims and statements at issue involve payments made by State-funded health assistance and insurance programs, including Medicaid, and payments made by other State-funded agencies or entities.

23.     The statutes of the States under which Relator brings these actions are the:

a.  California False Claims Act, Cal. Govt. Code §§ 12650, *et seq.*;

b.  Colorado Medicaid False Claim Act, C.R.S. §§ 25.5-4-304, *et seq.;*

c.  Connecticut False Claims Act, Gen. Stat. of Ct., Chap. 319v, §§17b-301a, *et seq.;*

d.  Delaware False Claims and Reporting Act, 6 Del C. §§ 1201, *et seq.*;

e.  Florida False Claims Act, Fla. Stat. §§ 68.081, *et seq.*;

f.  Georgia False Medicaid Claims Act, O.C.G.A. §§ 49-4-168 *et seq.*;

g.  Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. §§ 175/1, *et seq.*;

h.  Indiana False Claims and Whistleblower Protection Act, In. Code §§ 5-11-5.5 *et seq.*;

i.  Louisiana False Claims Act/Medical Assistance Programs Integrity Law, 46 La. Rev. Stat. Ch. 3 §§ 437.1, *et seq.*;

j.  Maryland False Health Claims Act, §§ 2-601 *et seq.;*

k.  Massachusetts False Claims Law, Mass. Gen. Laws ch. 12 §§ 5A, *et seq.*;

l.  Michigan Medicaid False Claims Act, MCLS §§ 400.601 *et seq.*;

m. Montana False Claims Act, Mont. Code §§ 17-8-401 *et seq.*;

n.  Nevada False Claims Act, Nev. Rev. Stat. §§ 357.010, *et seq.*;

o.  New Jersey False Claims Act, N. J. Stat. Ann. §§ 2A:32C-1 *et seq.*;

p.  New York False Claims Act, N.Y. Fin. Law §§ 187 *et seq.*;

q.  North Carolina False Claims Act, N. C. Gen. Stat. Ann. §§ 1-605 *et seq.*;

r.  Oklahoma Medicaid False Claims Act, Okla. Stat. Ann. §§ 5053 *et seq.*;

s.  Rhode Island False Claims Act, R. I. St. §§ 9-1.1-1 *et seq.*;

t.  Tennessee Medicaid False Claims Act, Tenn. Code §§ 71-5-181, *et seq.*;

u.  Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code §§ 36.001 *et seq.;*

v.  Virginia Fraud Against Taxpayers Act, Va. Code §§ 8.01-216.1, *et seq.*;

w.  Wisconsin False Claims Act, Wis. Stat. Ann. §§ 20.931 (1) *et seq.*; and

x.  District of Columbia False Claims Act, D.C. Code §§ 2-308.03, *et seq.*

y.  Chicago False Claims Act, Municipal Code ch.1, §§ 22-010 *et seq.*

z.  New York City False Claims Act, N.Y.C. Admin. Code, §§ 7-801 *et seq.*

### The Anti-Kickback Statute

24.     The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), reflects Congress' concern that payments to those who can influence healthcare decisions will result in goods and services being provided that are medically unnecessary, of poor quality, or even harmful to a vulnerable patient population. To protect the integrity of the program from these difficult to detect harms, Congress enacted a *per se* prohibition against the payment of kickbacks in any form, regardless of whether the particular kickback gave rise to overutilization or poor quality of care. First enacted in 1972, Congress strengthened the statute in 1977 and 1987 to ensure that kickbacks masquerading as legitimate transactions do not evade its reach. *See* Social Security Amendments of 1972, Pub. L. No. 92-603, §§ 242(b) and (c); 42 U.S.C. § 1320a-7b. Medicare-Medicaid

Antifraud and Abuse Amendments, Pub. L. No. 95-142; Medicare and Medicaid Patient and Program Protection Act of 1987, Pub. L. No. 100-93.

25.    The Anti-Kickback Statute prohibits any person or entity from making or accepting payment to induce or reward any person for referring, recommending or arranging for federally-funded medical services, including services provided under the Medicare, Medicaid and (as of January 1, 1997) TRICARE programs.  42 U.S.C. § 1320a-7b(b).

26.    The Anti-Kickback Statute makes it a crime to knowingly and willfully offer, pay, solicit or receive any remuneration to induce a person—

> (1)    to refer an individual to a person for the furnishing of any item or service covered under a federal healthcare program; or

> (2)    to purchase, lease, order, arrange for or recommend any good, facility, service, or item covered under a federal health care program.

27.    The term "any remuneration" encompasses any kickback, bribe, or rebate, direct or indirect, overt or covert, in cash or in kind.  42 U.S.C. § 1320a-7b(b)(1).

28.    Parties who contract or subcontract with the Federal Government are subject to the provisions of the Anti-Kickback Statute.  That law renders it impermissible for any person "to provide, attempt to provide, or offer to provide any kickback," and defines 'kickback' to mean "any money, fee, commission, credit, gift, gratuity, *thing of value*, or compensation of any kind which is provided, directly or indirectly, to any prime contractor, prime contractor employee, subcontractor, or subcontractor employee *for the purpose of improperly obtaining or rewarding favorable treatment* in connection with a

prime contract or in connection with a subcontract relating to a prime contract." 41 U.S.C. §§ 52 -53 (emphasis added).

29.      Examples of arrangements that may run afoul of the Anti-Kickback Statute include practices in which a home health agency pays a fee to a physician for each plan of care certified, provides items or services for free or below fair market value to benficiaries of Federal health care programs, provides nursing or administrative services for free or below fair market value to physicians, hospitals or other potential referral sources.  See 42 U.S.C. § 1320a-7b; 60 Fed. Reg. 40,847 (1995); 63 Fed. Reg. 42,414, 42,418 (Aug. 7, 1998).

30.      Defendants implied and/or expressly certified compliance with the Anti-Kickback Statute.

**The Stark Laws**

31.      Enacted as amendments to the Social Security Act, 42 U.S.C.§ 1395nn (commonly known as the "Stark Statute"), the Stark Statute prohibits a health care provider, such as a nursing service or pharmacy, from submitting Medicare and Medicaid claims for payment based on patient referrals from physicians having a "financial relationship" (as defined in the statute) with the health care provider.  The regulations implementing 42 U.S.C. § 1395nn expressly require that any provider collecting payment for a healthcare service "performed under a prohibited referral must refund all collected amounts on a timely basis." 42 C.F.R. § 411.353.

32.      The Stark Laws establish the clear rule that the government will not pay for items or services prescribed by physicians who have improper financial relationships with other providers.  In enacting the statute, Congress found that financial relationships between physicians and entities to whom they refer patients can compromise the

physicians' professional judgment as to whether an item or service is medically necessary, safe, effective, and of good quality.  Congress relied upon various academic studies consistently showing that physicians who had financial relationships with health care providers ordered more of those providers' services than physicians without those financial relationships.  The Stark Laws were designed specifically to reduce the loss suffered by the Medicare and Medicaid programs due to such questionable overutilization of services.

33.     Congress enacted the Stark Statute in two parts, commonly known as Stark I and Stark II.  From its inception the Stark Statute was targeted at clinical laboratory services.  Enacted in 1989, Stark I applied to referrals of Medicare patients for clinical laboratory services made on or after January 1, 1992 by physicians with a prohibited financial relationship with the clinical lab provider.  *See* Omnibus Budget Reconciliation Act of 1989, P.L. 101-239, § 6204.  In 1993, Congress extended the Stark Statute ("Stark II") to referrals for ten additional designated health services ("DHS").  Stark II also extended aspects of the Medicare prohibition on physician referrals to Medicaid.  *See* Omnibus Reconciliation Act of 1993, P.L. 103-66, §§  13562, 13624.  Social Security Act Amendments of 1994, P.L. 103-432, § 152.

34.     In pertinent part, the Stark Statute provides:

a.   Prohibition of certain referrals

(1) In general

Except as provided in subsection (b) of this section, if a physician (or immediate family member of such physician) has a financial relationship with an entity specified in paragraph (2) then—

> (A) <u>the physician may not make a referral to the entity</u> for the furnishing of designated health services for which payment otherwise may be made under this subchapter,
>
> (B) <u>the entity may not present or cause to be presented a claim under this subchapter or bill</u> to any individual, third-party payor, or other entity for designated health services furnished pursuant to a referral prohibited under subparagraph (A).

42 U.S.C. § 1395nn (emphasis added).

35. The Stark Laws broadly define prohibited financial relationships to include any compensation paid directly or indirectly to a referring physician, subject to certain exceptions not applicable in this case. The financial relationships that trigger the prohibition on referrals include any ownership or investment interest in the entity as well as any compensation arrangement with the entity, unless an exception applies. 42 C.F.R. § 411.354. Indirect financial arrangements in which the relationship is formed through an intervening third party are also included. *Id.*

36. A *direct* financial relationship exists if remuneration passes between the referring physician and the entity furnishing DHS. 42 C.F.R. § 411.354(a)(2). Remuneration means any payment or other benefits made directly or indirectly, overtly or covertly, in cash or in kind. 42 C.F.R. § 351. Remuneration includes the provision of services and benefits.

37. A "referral" means a request by a physician for an item or service for which a payment may be made under Medicare, including a request for a consultation

(including any tests or procedures ordered or performed by the consulting physician or under the supervision of the consulting physician), and the request or establishment of a plan of care by a physician that includes the furnishing of DHS (with certain exceptions for consultations by pathologists, diagnostic radiologists, and radiation oncologists).  42 U.S.C. § 1395nn(h)(5).

38.     The Stark Laws prohibit the billing of DHS that were provided as a result of a prohibited referral.  42 C.F.R. § 411.353(b).  An entity that receives a prohibited referral may not present a claim, or cause the presentation of such claim to Medicare or Medicaid or other third-party payer for reimbursement of the services.  *Id.*

39.     An entity that collects payment for DHS that were performed under a prohibited referral must refund all collected amounts on a timely basis.  42 C.F.R. § 411.353(d).

40.     In sum, the Stark Laws prohibit health care providers from billing Medicare for certain designated services referred by a physician with whom the provider has a financial relationship of any type not falling within specific statutory exceptions. 42 U.S.C.§ 1395nn

41.     Defendants implied and/or expressly certified compliance with the Stark Laws.

### THE FACTS

### New York Home Health Care Agencies

42.     New York State licenses two types of organizations that provide home health care:  Certified Home Health Agencies ("CHHA's") and Licensed Home Care Services Agencies ("LHCSA's").  Only the employees of such agencies are permitted to

provide hands-on care to patients, from help with bathing to the administration of medications.

43.     CHHA's provide part-time, intermittent health care and support services to patients who need intermediate and skilled health care.  CHHA's also provide long-term nursing and home health aide services and can either provide or arrange for other services including medical supplies and equipment.

44.     LHCSA's provide hourly nursing care and homemaker, housekeeper, personal-care attendants and other health and social services.

45.     A CHHA can bill Medicare and Medicaid; a LHCSA cannot.  LHCSA sometimes subcontract with CHHA's to provide services to persons with Medicaid or Medicare coverage.  10 NYCRR § 766.10;

46.     Trinity, now Walgreens Infusion and Respiratory Services, is a LHCSA, and thus may not bill Medicare or Medicaid for skilled nursing services such as infusion therapy.  Trinity may and has contracted with a CHHA to provide skilled nursing services.  However, rather than utilizing a CHHA to deliver infusion services, Trinity itself provides nursing services, free of charge to its infusion patients.

47.     Walgreens maintains the largest nationwide nursing network staffed by registered nurses specializing in complex therapies.

**Walgreens Corporate Integrity Agreement**

48.     In 2008, Walgreens entered into a corporate integrity agreement with the Office of Inspector General for the Department of Health and Human Services.  Under that agreement, Walgreens is required to provide its employees with information on how to report fraud and abuse against Medicaid and Medicare.

49.    Paragraph 45 of Walgreens Health Services Integrity and Compliance

Manual provides the following:

RELATIONSHIPS WITH ACTUAL OR POTENTIAL REFERRERS AND

THEIR FAMILY MEMBERS

General Prohibition of Paying, Offering, Soliciting, or Receiving

Remuneration

Employees must never provide or offer a bribe to induce the referral of
federal health care program business by a person or entity to WHS.
Similarly, employees must never solicit or receive a bribe from any person or
entity in exchange for referring federal health care program business to that
person or entity.  Such activities are prohibited because they could result in
violation of the Anti-kickback Statute and other health care fraud and abuse
laws.

50.    Paragraph 46 of the Walgreens Health Services Integrity and

Compliance Manual provides the following:

RELATIONSHIPS WITH CUSTOMERS

Reduction or Waiver of Copayments and Other Payment Responsibilities

The federal Anti-Kickback Statute makes it illegal to offer, pay, solicit, or
receive anything of value as an inducement to generate business payable by
federal health care programs.  In addition, federal law forbids offering or
giving something of value to a federal health care program beneficiary if it
likely will influence the beneficiary's choice of provider.  WHS therefore
does not reduce customer copayment obligations or payment responsibilities
absent and individualized, good faith determination of financial need or legal
requirement.

**Walgreens Free Nursing Kickback Scheme and Unlawful Financial Arrangement**

51.    Defendants provide their clients with intravenous medications at home.

Defendants provide antibiotics, and other, more expensive therapies called Specialty

Medications.

52.      Specialty Medications are used in the treatment of chronic conditions and complex therapies such as rheumatoid arthritis, multiple sclerosis, and cancer.  In addition, Walgreens is one of the nation's leading providers of home infusion therapy with intravenous immunoglobulin for bleeding disorders such as hemophilia and von Willebrand disease.

53.      Specialty medications, such as those used to treat hemophilia, are very expensive and can cost over $150,000 per year per patient.  Walgreens refers to hemophilia medications as "high-value medications."  At Trinity, more than 75% of its revenues are attributable to high-value medications.

54.      Trinity designates and maintains records of physicians who are important referral sources and who practice in a field where "high-value medications" are prescribed.

55.      Trinity designates Hematologists as important referral sources because they prescribe "a lot of Factor and Factor-like medications such as Factor VIII, Factor IX, Anti-Inhibitor medications such as *Novo Seven*; and replacement therapies such as *Fibrinogen or RASTAP.*"

56.      Neurologists and Immunologists are important referral sources because they "prescribe the high-dollar value medications such as IGG or IVIG and HBiG."

57.      Cardiologists are important referral sources because they refer patients who "are to receive IV Inotropic Medications (medications that make the heart pump stronger and that Medicare pays a good reimbursement rate) such as *Milrinone and Dobutamine*."

58.     Gastroenterologists are important referral sources because those specialists "are responsible for ordering another high-dollar value medication called *Total Parentaeral Nutrition (TPN)*."

59.     The following individual physicians are designated important to Trinity: Anne Marie Hurlet Jensen; Richard Lipton; Rahman Pourand; Christopher Walsh; Joan Graziano; Anziska Yaakov; and Robert Parker.

60.     To illustrate:  Dr. Hurlet Jensen treats patient X, who has hemophilia. While Trinity does not provide the infusion pharmaceuticals of Factor VIII and Nova Seven for patient X, Trinity provides free nursing, including the infusion of medications, and free catheter care for patient X.  Trinity has provided infusion services for patient X since 2006.  According to the patient X nursing notes, on August 21, 2009, Trinity decided to continue to provide free nursing, even though since October, 2008, Trinity provided no drugs to the patient.   The nursing notes further provide that Trinity nurses will check with regional managers and will "evaluate the referral source and make a decision for the future."

61.     Trinity continued to provide free nursing services for patient X through at least March 25, 2011.  Trinity provided patient X with over 63 nursing visits free of charge.  Relator estimates that the free nursing provided to patient X has a value in excess of $25,000.

62.     The important prescribing physicians, and the clinics and hospitals that they work with, enjoy enhanced reputational benefits from the free nursing services that Trinity provides.

63.     The hemophilia community is relatively small.  Hemophilia affects approximately 20,000 people in the United States.  Hemophiliacs and their parents at some time become acquainted with one another (by meeting at hemophilia conventions or at clinics), and take the opportunity to "compare notes."  While comparing physician's care, a parent likely learns that one physician provides enhanced nursing services from Trinity that another physician may not.  These enhanced nursing services convert to enhanced reputations, which in turn convert to increased business for physicians and clinics.

64.     In addition to enjoying enhanced reputations among patient populations, by providing patients and their parents with as many nursing visits as they request, the prescribing physicians' clinics enjoy a reduced workload for his or her own staff.  Instead of bogging down the clinic with the patient or parent questions or problems, patients or parents of hemophiliac children are provided with Trinity nurses who will make an unlimited number of visits.  For example with patient X, whenever the mother is unavailable to care for her son, she calls Trinity and Trinity provides nursing care free of charge.

65.     Upon information and belief, the free nursing kickback scheme is a widespread practice in states in the Northeast and Mid-Atlantic regions of the U.S.  The Regional Vice President Northeast and Mid-Atlantic Gary Calabresi and the Regional Director of Nursing Josephine Kelly are fully aware of the free nursing kickback scheme.

66.     Through the free nursing kickback scheme Walgreens Infusion and Respiratory Services has become the preferred provider of infusion pharmaceuticals for the physicians who prescribe such drugs.

67.     The free nursing scheme is remuneration that constitutes an unlawful financial relationship under the Stark Laws.

68.     Physicians prescribed Defendants' pharmaceuticals, who then sought reimbursement from Medicare, Medicaid, and other government programs for such false claims.

69.     The prescriptions made by the physicians did not qualify for any statutory or regulatory exception to the Stark referral prohibition.

70.     Defendants' submission of claims for the designated health services furnished pursuant to the prohibited prescriptions and illegal kickbacks violated the Anti-Kickback Statute, the Stark Laws, and the False Claims Act.

71.     Had the Government known such pharmaceuticals were prescribed as a result of kickbacks, the Government would not otherwise have paid for and/or reimbursed Defendants.

**Defendants' Neglectful, Harmful and Substandard Nursing Care**

72.     Walgreens nurses provided and continue to provide substandard, negligent and potential harmful care to infusion therapy patients.  This often resulted from Defendants shortchanging some patients in favor of patients who are prescribed high-value infusion drugs.

73.     Defendants, including management, were well aware of the quality of care issues, yet did not remedy them.

74.      Because Relator had quality-of-care concerns with the infusion services at Trinity, he developed an instructional computer application to teach nurses and patients

the proper techniques for infusion therapy and to provide a standard reference guide for nurses and patients. Defendants disregarded this application.

**Defendants' Unlawful Retaliation**

75.     Relator John Doe worked for Defendants from July 2009 through July 2011.

76.     Relator has over twenty years of experience in nursing and over ten years in the home infusion setting. Relator has worked as a Community Health Infusion Nurse, Nurse Manager, and as a Clinical Coordinator in infusion pharmacies, and at Certified Home Health Agencies.

77.     Relator joined Defendants in a dual role as a Clinical Coordinator and Performance Improvement coordinator, and was later promoted to Clinical Liaison. However, as described more particularly below, Walgreens retaliated against him by removing him from his position as Clinical Liaison, then demoting him again by relegating him to a Field Nurse position, and finally terminating him.

78.     Relator's duties while working for Defendants included taking referrals and assessing patient candidacy for homecare services. Relator worked with pharmacists, physicians, nurses, clients, client caregivers, and other homecare agencies to formulate the best and safest plan of patient care. Relator also made patient visits as an infusion nurse.

79.     Throughout his tenure working for Defendants, Relator consistently complained to Defendants' management, including his direct supervisor Allison Jennings at Trinity, as well as others, about nursing failures, other failings pertaining to patient

care. Relator repeatedly warned Defendants' management about instances of neglectful, harmful and substandard nursing care.

80.     Upon reviewing nursing progress notes, Relator also questioned management why Defendants were giving away free nursing services and shortchanging some patients in favor of patients who are prescribed high-value infusion drugs.

81.     As a result of the concerns Relator expressed in his capacity as a certified registered nurse infusionist, Trinity engaged in threats, harassment and discrimination and other negative employment actions with respect to Relator as described more particularly below.

82.     Upon information and belief, Defendants intentionally retaliated against Relator by demoting, marginalizing, and ultimately discharging him because he raised serious violations of law by Defendants, because he reported some of these violations to the highest levels of management and because Defendants feared he would become a whistleblower in an action filed against them.

83.     The pattern of Relator bringing concerns to Defendants' attention, and Defendants' response of retaliating started early on.  Relator brought concerns' to management's attention immediately after starting his job, including by stating to Defendants' management "this place is a mess."

84.     Defendants soon retaliated.  In September 2009, they forced Relator to stop working for other employers as a certified registered nurse infusionist, thus curtailing his income.

85.     In order to improve nursing standards and patient safety, Relator developed a computer application called "Health Education Acquired through

Technology ("HEAT").  HEAT was designed as an instructional tool to provide infusion patients with education and training and to provide standardized procedures for nurses to practice and to use to train their patients to perform self infusions.   Relator first brought HEAT to Defendants' management's attention in Spring 2010.  During Relator's meetings with senior management to discuss HEAT, he disclosed to them his concerns about Defendants' nursing care.

86.     Once senior management became aware of Relator's concerns about Defendants' unlawful activity, they became uninterested in HEAT, and instead, Defendants heightened their retaliation against Relator.

87.     While Relator had been promoted in April 2010 to Clinical Liaison, defendants demoted him back to Clinical Coordinator in May 2010.

88.     On September 13, 2010, Defendants demoted Relator again, this time to a Field Nurse Position, which demotion became effective on October 20, 2010.  As a result, Relator could no longer work overtime, and lost the ability to earn substantially more money.

89.     On October 5, 2010, Relator sent an email to Gary Calabrese, the Northeast and Mid-Atlantic Regional Manager as well as Lou Juliano, the General Manager of Trinity Homecare, Paul Mastrapa, the President of Trinity Homecare, and many other members of the Walgreens executive management team reporting multiple instances of harmful, neglectful and substandard nursing care that Relator witnessed.

90.     On January 5, 2011, Relator sent another email to Defendants' management, again notifying them of the substandard nursing practices.

91.     In March 2011, Relator had a meeting with the president of Walgreens where again raised Defendants' unlawful activity and poor patient care.  On April 1, 2001, Relator again emailed Defendants' management about Defendants' poor patient care, and sent multiple additional emails throughout the month of April.

92.     Defendants responded by continuing to marginalize him.  Specifically, in April 2011, Defendants notified Relator that he was being "counseled" for alleged HIPPA violations for sending emails to Defendants' management. This was a pretextual attempt to silence Relator and to stop him from sending emails about Defendants' unlawful activity.

93.     Relator continued to urge Defendants to stop their unlawful activity. Ultimately, Defendants retaliated against Relator in July 2011 by terminating him because he raised serious violations of law by Defendants, because he threatened to report these violations to State and Federal authorities and because Defendants feared he would become a whistleblower in an action filed against them.  Defendants also removed his medical benefits, and upon information and belief, have taken steps to prevent him from securing future employment.

94.     As a result of Defendants' acts, Relator has suffered economic damages, including but not limited to the loss of his job, the monies he has expended since his discharge in pursuing new employment, and lost wages, as well as damages resulting from personal hardship, including but not limited to emotional distress.

### FIRST CLAIM

False Claims Act: Presentation of False Claims
(31 U.S.C. § 3729(a)(1)(A)

95.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

96.     The United States seeks relief against Defendants under Section 3729(a)(1)(A) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

97.     Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval in connection with the submission of their requests for reimbursement under the Medicaid and Medicare Programs.

98.     The United States paid Defendants because of Defendants' fraudulent conduct.

99.     By reason of Defendants' false claims, the United States has been damaged in a substantial amount to be determined at trial.

100.    In particular, Defendants have knowingly caused physicians, other healthcare providers and/or beneficiaries to present claims to the United States Government and to Medicaid that were the product of the payment of the above-described kickbacks.  The payment of kickbacks to induce prescriptions constitutes a "thing of value . . . for the purpose of improperly obtaining or rewarding favorable treatment," which were designed to and in fact did increase the level of business in violation of the Anti-Kickback Act of 1986.

101.    As a result of the conduct set forth in this cause of action, the Government suffered harm as a result of paying or reimbursing for pharmaceuticals which, had the Government known such pharmaceuticals were prescribed as a result of kickbacks, the Government would not otherwise have paid for and/or reimbursed them.

102.     By engaging in the conduct described in the foregoing Paragraphs, Defendants have violated the False Claims Act.

## SECOND CLAIM

Using False Records or Statements
(31 U.S.C. § 3729(a)(1)(B)

103.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

104.     The United States seeks relief against Defendants under Section § 3729(a)(1)(B) of the False Claims Act, 31 U.S.C. 3729(a)(1)(B).

105.     Defendants knowingly made, used, or caused to be made or used, false records or statements material to false and fraudulent claims, in connection with the submission of its requests for reimbursement under the Medicaid and Medicare Programs.

106.     The United States paid such false or fraudulent claims because of Defendants' acts and conduct.

107.     By reason of Defendants' false claims, the United States has been damaged in a substantial amount to be determined at trial.

108.     In particular, Defendants have knowingly caused physicians, other healthcare providers and/or beneficiaries to present claims to the United States Government and to Medicaid that were the product of the payment of the above-described kickbacks.  The payment of kickbacks to induce prescriptions constitutes a "thing of value . . . for the purpose of improperly obtaining or rewarding favorable treatment," which were designed to and in fact did increase the level of business in violation of the Anti-Kickback Act of 1986.

109.     As a result of the conduct set forth in this cause of action, the Government suffered harm as a result of paying or reimbursing for pharmaceuticals which, had the Government known such pharmaceuticals were prescribed as a result of kickbacks, unlawful financial relationship, or violated the Anti-Kickback Statute or the Stark Laws, the Government would not otherwise have paid for and/or reimbursed them.

110.     By engaging in the conduct described in the foregoing Paragraphs, Defendants have violated the False Claims Act.

## THIRD CLAIM

False Claims Act: Making or Using False Record
or Statement to Avoid an Obligation to Refund
(31 U.S.C. § 3729(a)(7) and 31 U.S.C. § 3729(a)(1)(G) as amended in 2009)

111.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

112.     The United States seeks relief against Defendants under Section § 3729(1)(G) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

113.     Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government in connection with the submission of their requests for reimbursement under the Medicaid and Medicare Programs.

114.     Defendants failed to pay or transmit money due to the United States because of Defendants' acts and conduct.

115.     By reason of the Defendants' use of false statements, the United States has been damaged in a substantial amount to be determined at trial.

## FOURTH CLAIM

California False Claims Act
(Cal. Govt. Code §§ 12650 *et seq.*)

116.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

117.     This is a claim for treble damages and civil penalties under the California False Claims Act, Cal. Govt. Code §§ 12650 *et seq.*

118.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to an officer or employee of the State or of any political subdivision thereof false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

119.     The State of California, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

120.     By reason of these payments, the State of California has been damaged, and continues to be damaged in a substantial amount.

## FIFTH CLAIM

Colorado Medicaid False Claims Act
C.R.S. §§ 25.5-4-304, et seq.

121.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

122.     This is a claim for treble damages and civil penalties under the Colorado Medicaid False Claims Act, C.R.S. §§ 25.5-4-304, et seq.

123.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented a false or fraudulent claim to an officer or employee of the State of Colorado  for payment or approval under the medical assistance programs.

124.     By reason of these payments, the State of Colorado has been damaged, and continues to be damaged in a substantial amount.

### SIXTH CLAIM

Connecticut False Claims Act
(Gen. Stat. of Ct., Chap. 319v, §§17b-301a, *et seq.*)

125.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

126.     This is a claim for treble damages and civil penalties under the Connecticut False Claims Act, Gen. Stat. of Ct., Chap. 319v, §§17b-301a *et seq.*

127.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented a false or fraudulent claim to an officer or employee of the State of Connecticut for payment or approval under the medical assistance programs.

128.     By reason of these payments, the State of Connecticut has been damaged, and continues to be damaged in a substantial amount.

### SEVENTH CLAIM

Delaware False Claims and Reporting Act
(6 Del. Code §§ 1201 *et seq.*)

129.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

130.     This is a claim for treble damages and civil penalties under the Delaware False Claims and Reporting Act, 6 Del C. §§ 1201 *et seq.*

131.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the Government false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals, and used false or fraudulent records to accomplish this purpose.

132.     The State of Delaware, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

133.     By reason of these payments, the State of Delaware has been damaged, and continues to be damaged in a substantial amount.

## EIGHTH CLAIM

Florida False Claims Act
(Fla. Stat. §§ 68.081 *et seq.*)

134.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

135.     This is a claim for treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. §§ 68.081 *et seq.*

136.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to an officer or employee of an agency false or fraudulent claims for the improper payment or approval of prescriptions

for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

137.    The State of Florida, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

138.    By reason of these payments, the State of Florida has been damaged, and continues to be damaged in a substantial amount.

**NINTH CLAIM**

Georgia False Medicaid Claims Act
(O.C.G.A. §§ 49-4-168 *et seq.*)

139.    Relator re-alleges and incorporates by reference herein the allegations previously alleged.

140.    This is a claim for treble damages and civil penalties under the Georgia False Medicaid Claims Act, O.C.G.A. §§ 49-4-168 *et seq.*

141.    By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the Georgia Medicaid Program false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

142.    The Georgia Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

143.    By reason of these payments, the Georgia Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## TENTH CLAIM

Illinois Whistleblower Reward and Protection Act
(740 Ill. Comp. Stat. §§ 175/1 *et seq.*)

144.    Relator re-alleges and incorporates by reference herein the allegations previously alleged.

145.    This is a claim for treble damages and civil penalties under the Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. §§ 175/1 *et seq.*

146.    By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to an officer or employee of the State or a member of the Guard false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

147.    The State of Illinois, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

148.    By reason of these payments, the State of Illinois has been damaged, and continues to be damaged in a substantial amount.

## ELEVENTH CLAIM

Indiana False Claims and Whistleblower Protection Act
(In. Code §§ 5-11-5.5 *et seq.*)

149.    Relator re-alleges and incorporates by reference herein the allegations previously alleged.

150.   This is a claim for treble damages and civil penalties under the Indiana

False Claims and Whistleblower Protection Act, In. Code §§ 5-11-5.5 *et seq.*

151.   By virtue of the submissions of non-reimbursable claims described

above, Defendants knowingly caused to be presented to the Indiana Medicaid Program

false or fraudulent claims for the improper payment or approval of prescriptions for

infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

152.   The Indiana Medicaid Program, unaware of the falsity or fraudulent

nature of the claims caused by Defendants, paid for claims that otherwise would not have

been allowed.

153.     By reason of these payments, the Indiana Medicaid Program has been

damaged, and continues to be damaged in a substantial amount.

**TWELFTH CLAIM**

Louisiana False Claims Act
(46 La. Rev. Stat. Ch. 3 §§ 437.1 *et seq.*)

154.   Relator re-alleges and incorporates by reference herein the allegations

previously alleged.

155.   This is a claim for treble damages and civil penalties under the

Louisiana False Claims Act, 46 La. Rev. Stat. Ch. 3 §§ 437.1 *et seq.*

156.   By virtue of the acts described above, Defendants offered or paid

remuneration, including but not limited to kickbacks, directly or indirectly, overtly or

covertly, in cash or in kind, for a good, supply, or service for which payment may be

made, in whole or in part, under the medical assistance programs.

157.   By virtue of the acts described above, Defendants knowingly presented

or caused to be presented a false or fraudulent claim to the State of Louisiana.

158.    By virtue of the acts described above, Defendants knowingly engaged in misrepresentation to obtain, or attempt to obtain, payment from medical assistance programs funds.

159.    By reason of these payments, the State of Louisiana has been damaged, and continues to be damaged in a substantial amount.

### THIRTEENTH CLAIM

Maryland False Claims Act
(Md. Ann. Code, Health Gen., Subtitle 6, §§ 2-601 *et seq.*)

160.    Relator re-alleges and incorporates by reference herein the allegations previously alleged.

161.    This is a claim for treble damages and civil penalties under the Maryland False Claims Act, Md. Ann. Code, Health Gen., Subtitle 6, §§ 2-601 *et seq.*

162.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented a false or fraudulent claim to the State of Maryland.

163.    By virtue of the acts described above, Defendants knowingly a false and fraudulent claim to obtain, or attempt to obtain, payment from medical assistance programs funds.

164.    By reason of these payments, the State of Maryland has been damaged, and continues to be damaged in a substantial amount.

### FOURTEENTH CLAIM

Massachusetts False Claims Act
(Mass. Gen. Laws ch. 12 §§ 5A *et seq.*)

165.    Relator re-alleges and incorporates by reference herein the allegations previously alleged.

166.     This is a claim for treble damages and civil penalties under the Massachusetts False Claims Act, Mass. Gen. Laws ch. 12 §§ 5A *et seq.*

167.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

168.     The State of Massachusetts, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

169.     By reason of these payments, the State of Massachusetts has been damaged, and continues to be damaged in a substantial amount.

### FIFTEENTH CLAIM

Michigan Medicaid False Claim Act
(M.C.L.S. §§ 400.601 *et seq.*)

170.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

171.     This is a claim for civil penalties under the Michigan Medicaid False Claims Act, MCLS §§ 400.601 *et seq.*

172.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be made to the Michigan Medicaid Program false statements or false representations of material fact in the application for Medicaid benefits and for use in determining rights to Medicaid benefits.

173.   The Michigan Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

174.   By reason of these payments, the Michigan Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## SIXTEENTH CLAIM

Montana False Claims Act
(Mont. Code. §§ 17-8-401 *et seq.*)

175.   Relator re-alleges and incorporates by reference herein the allegations previously alleged.

176.   This is a claim for treble damages and civil penalties under the Montana False Claims Act, Mont. Code §§ 17-8-401 *et seq.*

177.   By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the Montana Medicaid Program false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

178.   The Montana Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

179.   By reason of these payments, the Montana Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

**SEVENTEENTH CLAIM**

Nevada False Claims Act
(Nev. Rev. Stat. §§ 357.010 *et seq.*)

180.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

181.     This is a claim for treble damages and civil penalties under the Nevada False Claims Act, Nev. Rev. Stat. §§ 357.010 *et seq.*

182.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

183.     The State of Nevada, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

184.     By reason of these payments, the State of Nevada has been damaged, and continues to be damaged in a substantial amount.

**EIGHTEENTH CLAIM**

New Jersey False Claims Act
(N. J. Stat. Ann. §§ 2A:32C-1 *et seq.*)

185.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

186.     This is a claim for treble damages and civil penalties under the New Jersey False Claims Act, N. J. Stat. Ann. §§ 2A:32C-1 *et seq.*

187.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to an employee, officer or agent of

37

New Jersey, or to any other contractor, grantee or other recipient of New Jersey funds, false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals, and used false or fraudulent records to accomplish this purpose.

188.    The State of New Jersey, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

189.    By reason of these payments, the State of New Jersey has been damaged, and continues to be damaged in a substantial amount.

### NINETEENTH CLAIM

New York False Claims Act
(N.Y. Fin. Law §§ 187 *et seq.*)

190.    Relator re-alleges and incorporates by reference herein the allegations previously alleged.

191.    This is a claim for treble damages and civil penalties under the New York False Claims Act, N.Y. Fin. Law §§ 187 *et seq.*

192.    By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to an employee, officer or agent of the state or a local government false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

193.    The State of New York, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

194.     By reason of these payments, the State of New York has been damaged, and continues to be damaged in a substantial amount.

## TWENTIETH CLAIM

### North Carolina False Claims Act
### (N. C. Gen. Stat. Ann. §§ 1-605 *et seq.*)

195.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

196.     This is a claim for treble damages and civil penalties under the North Carolina False Claims Act, N. C. Gen. Stat. Ann. §§ 1-605 *et seq.*

197.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the State of North Carolina false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

198.     The State of North Carolina, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

199.     By reason of these payments, the State of North Carolina has been damaged, and continues to be damaged in a substantial amount.

## TWENTY-FIRST CLAIM

### Oklahoma Medicaid False Claims Act
### (Okla. Stat. Ann. §§ 5053 *et seq.*)

200.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

201.     This is a claim for treble damages and civil penalties under the Oklahoma Medicaid False Claims Act, Okla. Stat. Ann. §§ 5053 *et seq.*

202.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to an officer or employee of the State of Oklahoma false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

203.     The State of Oklahoma, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

204.     By reason of these payments, the Oklahoma Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## TWENTY-SECOND CLAIM

Rhode Island False Claims Act
(R. I. St. §§ 9-1.1-1 *et seq.*)

205.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

206.     This is a claim for treble damages and civil penalties under the Rhode Island False Claims Act, R. I. St. §§ 9-1.1-1 *et seq.*

207.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to an officer or employee of the state or a member of the guard false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

208.     The State of Rhode Island, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

209.     By reason of these payments, the State of Rhode Island has been damaged, and continues to be damaged in a substantial amount.

## TWENTY-THIRD CLAIM

### Tennessee Medicaid False Claims Act
(Tenn. Code §§ 71-5-181 *et seq.*)

210.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

211.     This is a claim for treble damages and civil penalties under the Tennessee Medicaid False Claims Act, Tenn. Code §§ 71-5-181 *et seq.*

212.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the state false or fraudulent claims for the improper payments or approval of prescriptions for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

213.     The State of Tennessee, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

214.     By reason of these payments, the State of Tennessee has been damaged, and continues to be damaged in a substantial amount.

## TWENTY-FOURTH CLAIM

### Texas Medicaid Fraud Prevention Law
(Tex. Hum. Res. Code §§ 36.001 *et seq.*)

215.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

216.     This is a claim for treble damages and civil penalties under the Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code §§ 36.001 *et seq.*

217.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly made or caused to be made false statements or misrepresentations of material fact, and knowingly concealed or failed to disclose information to permit persons to receive benefits or payments under the Medicaid program for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

218.     Defendants knowingly paid, charged, solicited accepted or received, in addition to an amount paid under the Medicaid program, a gift, money, a donation or other consideration as a condition to the provision of a service or product or the continued provision of a service or product where cost of the service or product was paid for, in whole or in part, under the Medicaid program.

219.     The Texas Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

220.     By reason of these payments, the Texas Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## TWENTY-FIFTH CLAIM

Virginia Fraud against Taxpayers Act
(Va. Code §§ 8.01-216.1 *et seq.*)

221.    Relator re-alleges and incorporates by reference herein the allegations previously alleged.

222.    This is a claim for treble damages and civil penalties under the Virginia Fraud against Taxpayers Act, Va. Code §§ 8.01-216.1 *et seq.*

223.    By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to an officer or employee of the Commonwealth false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

224.    The Virginia Commonwealth Government, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

225.    By reason of these payments, the Virginia Commonwealth Government has been damaged, and continues to be damaged in a substantial amount.

## TWENTY-SIXTH CLAIM

Wisconsin False Claims Act
(Wis. Stat. Ann. §§ 20.931 (1) *et seq.*)

226.    Relator re-alleges and incorporates by reference herein the allegations previously alleged.

227.    This is a claim for treble damages and civil penalties under the Wisconsin False Claims Act, Wis. Stat. Ann. §§ 20.931 (1) *et seq.*

228.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to an officer, employee or agent of Wisconsin false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

229.     The State of Wisconsin, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

230.     By reason of these payments, the State of Wisconsin has been damaged, and continues to be damaged in a substantial amount.

### TWENTY-SEVENTH CLAIM

District of Columbia False Claims Act
(D.C. Code §§ 2-308.13 *et seq.*)

231.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

232.     This is a claim for treble damages and civil penalties under the District of Columbia False Claims Act, D.C. Code §§ 2-308.13 *et seq.*

233.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to an officer or employee of the District false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

234.     The District of Columbia, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

235.     By reason of these payments, the District of Columbia has been damaged, and continues to be damaged in a substantial amount.

## TWENTY-EIGHTH CLAIM

Chicago False Claims Act
(Mun. Code Ch. 1 §§ 22-010 *et seq.*)

236.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

237.     This is a claim for treble damages and civil penalties under the Chicago False Claims Act, Mun. Code Ch. 1 §§ 22-010 *et seq.*

238.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to an officer, employee or agent of Chicago false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

239.     The City of Chicago, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

240.     By reason of these payments, the City of Chicago has been damaged, and continues to be damaged in a substantial amount.

## TWENTY-NINTH CLAIM

New York City False Claims Act
(N.Y.C. Admin. Code §§ 7-801 *et seq.*)

241.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

242.     This is a claim for treble damages and civil penalties under the New York City False Claims Act, N.Y.C. Admin. Code §§ 7-801 *et seq.*

243.     By virtue of the submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to an officer, employee or agent of New York City false or fraudulent claims for the improper payment or approval of prescriptions for infusion pharmaceuticals and used false or fraudulent records to accomplish this purpose.

244.     The City of New York, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

245.     By reason of these payments, the City of New York has been damaged, and continues to be damaged in a substantial amount.

## THIRTIETH CLAIM

False Claims Act: Retaliation
(31 U.S.C. § 3730(h))

246.     Relator re-alleges and incorporates by reference herein the allegations previously alleged.

247.    As more particularly set forth in the foregoing Paragraphs by virtue of the acts alleged herein, and in particular paragraphs, the Defendants discharged, demoted, threatened, harassed and/or discriminated against the Relator in the terms and conditions of her employment after Relator lawfully reported and investigated what he believed to be fraudulent conduct or wrongdoing to her superiors in violation of 31 U.S.C. 3730(h) in furtherance of an investigation under the False Claims Act. Relator seeks compensatory damages and damages for emotional distress and other appropriate statutory relief pursuant to this section.

### THIRTY-FIRST CLAIM
Retaliation
(N.Y. Fin. Law § 191))

248.    Relator re-alleges and incorporates by reference herein the allegations previously alleged.

249.    As more particularly set forth in the foregoing Paragraphs by virtue of the acts alleged herein, and in particular paragraphs, the Defendants discharged, demoted, suspended, threatened, harassed and discriminated against the Relator in the terms and conditions of her employment after Relator lawfully reported and investigated what he believed to be fraudulent conduct or wrongdoing to her superiors in violation of N.Y. Fin. Law § 191 in furtherance of an investigation or other efforts to stop one or more violations of this article. Relator seeks compensatory damages and damages for emotional distress and other appropriate statutory relief pursuant to this section.

### PRAYER FOR RELIEF

**WHEREFORE**, Relator, on behalf of the United States Government, the States and Cities, demands judgment against the above-named Defendants, ordering that:

a.      Pursuant to 31 U.S.C. § 3729(a), Defendants pay: an amount equal to three times the amount of damages the United States Government has sustained as a result of Defendants' actions, which Relator currently estimate to be in the hundreds of millions of dollars; plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. §§ 3729 *et seq.*, or such other penalty as the law may permit and/or require for each violation of other laws which governed Defendants' conduct.

b.      Relator be awarded a realtor's share of the judgment to the maximum amount provided pursuant to 31 U.S.C. § 3730(d) of the False Claims Act and/or any other applicable provision of law;

c.      Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by 31 U.S.C. § 3730(o) and any other applicable provision of the law; and

d.      Relator be awarded such relief as is appropriate under the provisions of 31 U.S.C. § 3730(h) of the False Claims Act and NY State Finance Law § 191 of the New York False Claims Act for retaliatory discharge, including:

(1)     two times the amount of back pay with appropriate interest including pre-and post-judgment interest;

(2)     compensation for special damages, including damages for emotional distress, sustained by Relator in an amount to be determined at trial;

(3)     litigation costs and reasonable attorney's fees; and

(4)     such punitive damages as may be awarded under applicable law; and

e.      As provided by the following State laws, Relator and each named State

Plaintiff be awarded statutory damages in an amount equal to three times the amount of

actual damages sustained by each State as a result of Defendants' actions, as well as the

maximum statutory civil penalty for each violation by Defendants within each State;

Relator be awarded relator's share of any judgment; Relator be awarded all costs and

expenses associated with each of the pendent State claims, plus attorney's fees.:

> Cal. Govt. Code §§12650 *et seq.*;
> C.R.S. §§ 25.5-4-304, et seq.
> Gen. Stat. of Ct., Chap. 319v, §§17b-301a, *et seq.*
> 6 Del. C. §§ 1201 *et seq.*;
> Fla. Stat. Ann. §§ 68.081 *et seq.*;
> O.C.G.A. §§ 49-4-168 *et seq.*;
> 740 Ill. Comp. Stat. §§ 175/1 *et seq.*;
> In. Code §§ 5-11-5.5 *et seq.*;
> 46 La. Rev. Stat. Ch. 3, §§ 437.1 *et seq.*;
> Maryland Ann. Code, Health General, Subtitle 6, §§ 2-601 *et seq.*;,
> Mass. Gen. Laws Ch. 12 §§ 5A *et seq.*;
> MCLS §§ 400.601 *et seq.*
> Mont. Code §§ 17-8-401 *et seq.*;
> Nev. Rev. Stat. Ann. §§ 357.010 *et seq.*;
> N. J. Stat. Ann. §§ 2A:32C-1 *et seq.*;
> N.Y. Fin. Law §§ 187 *et seq.*;
> N. C. Gen. Stat. Ann. §§1-605 *et seq.*;
> Okla. Stat. Ann. §§ 5053 *et seq.*;
> R. I. St. §§ 9-1.1-1 *et seq.*;
> Tenn. Code Ann. §§ 71-5-181 *et seq.*;
> Tex. Hum. Res. Code §§ 36.001 *et seq.*;
> Va. Code. Ann. § 8.01-216.1 *et seq.*;
> Wis. Stat. Ann. §§20.931 (1) *et seq.*;
> D.C. Code Ann. §§ 2-308.13 *et seq.*;
> Chicago False Claims Act, Mun. Code ch.1, §§ 22-010 *et seq.;*
> New York City False Claims Act, N.Y.C. Admin. Code  §§ 7-801 *et seq.*; and

f.      Relator, the United States and the State and City Plaintiffs be awarded

such other and further relief as the Court may deem to be just and proper.

**JURY TRIAL IS DEMANDED**

Dated: New York, New York
      October 13, 2011

                        DIAMOND MCCARTHY LLP

                    By:

                        Robert W. Sadowski
                        Raphael Katz
                        New York Times Building
                        620 8th Avenue, 39th Floor
                        New York, New York  10018
                        Telephone: (212) 430-5400
                        Facsimile: (212) 430-5499
                        rsadowski@diamondmccarthy.com

                        Attorneys for Relator John Doe

TO:
United States Attorney
for the Southern District of New York
86 Chambers Street
New York, New York

Attorney General
Civil Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001